UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| VENITTA BENNETT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| VS. ) | |
| ) | |
| LTF CLUB MANAGEMENT ) | CIVIL ACTION NO. |
| COMPANY, LLC, LTF CLUB ) | |
| OPERATIONS COMPANY, INC., and ) | 3:23-CV-1106-G |
| LTF CLUB REAL ESTATE, ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM OPINION AND ORDER

Before the court are the defendants' motion for summary judgment (docket entry 5) and the plaintiff's motion to set aside the default judgment (docket entry 35).  For the reasons stated below, the motion for summary judgment is **GRANTED** and the motion to set aside the default judgment is **DENIED**.

I. BACKGROUND

The plaintiff Venitta Bennett ("Bennett") slipped on "recently painted sidewalk markers" and was injured leaving the defendants' gym.  Plaintiff's Original Petition ("Petition") (docket entry 10-4) ¶ 12, *attached to* Amended Notice of

Removal (docket entry 10). Bennett filed this suit against the defendants Spirit Realty, L.P. ("Spirit Realty"), LTF Club Management Company, LLC, LTF Club Operations Company, Inc., and LTF Real Estate Company, Inc. (collectively, "Life Time").[1] *Id.* Bennett alleges that Life Time's negligence regarding the condition on its premises caused her injuries. *Id.* ¶¶ 12-16.

Bennett filed her petition in Texas state court on April 18, 2023, asserting her negligence claim. *Id*. Life Time timely removed the case to this court on May 15, 2023. Notice of Removal (docket entry 1). Life Time filed its answer and asserted a counterclaim on the same day it removed the case. Defendants LTF Club Management Company, LLC, LTF Club Operations Company, Inc., and LTF Real Estate Company, Inc.'s Original Answer and Counterclaim Against Plaintiff Bennett (docket entry 2). On June 8, 2023, Life Time amended its answer and reasserted its counterclaim. *See generally* Defendants LTF Club Management Company, LLC, LTF Club Operations Company, Inc., and LTF Real Estate Company, Inc.'s Amended Answer and Counterclaim Against Plaintiff Bennett ("Amended Answer") (docket entry 15).

---

[1] On May 11, 2023, Bennett nonsuited Spirit Realty. *See* State Court Docket Sheet, *attached to* Amended Notice as Exhibit 3.

Life Time generally denies Bennett's allegations and also asserts affirmative defenses of assumption of risk and waiver of liability. *See* Amended Answer. Life Time contends that Bennett signed a Membership Usage Agreement ("the membership agreement") in which Bennett contractually agreed that she assumed the risk of "'dangers, hazards, and risks of injury or damages'" and to "'voluntarily and forever release and discharge Life Time from . . . any claims . . . of alleged liabilities[.]'" *Id.* ¶¶ 24-25. Life Time also asserted a counterclaim, alleging that Bennett violated her membership agreement by filing suit and Bennett is contractually obligated to pay Life Time's attorneys' fees and costs. *Id.* ¶¶ 26-28. Life Time argues that in the membership agreement, Bennett agreed "if [she] . . . assert[ed] a Negligence Claim against Life Time and/or breach[ed] my agreement not to sue Life Time, I will pay all reasonable fees (including attorneys' fees), costs and expenses incurred by Life Time ("Life Time's Fees and Costs") to defend [ ] the Negligence Claim(s)." *Id.* ¶ 27 (emphasis omitted). Bennett did not timely file an answer to the counterclaim, nor did she file an answer out of time with the court's leave.

On May 15, 2023, Life Time also filed its motion for summary judgment. Defendants LTF Club Management Company, LLC, LTF Club Operations Company, Inc., and LTF Real Estate Company, Inc.'s Motion for Summary Judgment ("Motion") (docket entry 5). Life Time argues that because Bennett waived and

- 3 -

released Life Time prior to her alleged injury, Bennett's claim is contractually barred as a matter of law. *Id*. ¶ 2.

On May 16, 2023, the court ordered Life Time to file and serve an amended notice of removal alleging the citizenship of Bennett for purposes of diversity subject matter jurisdiction. Order (docket entry 8). Life Time filed its amended notice of removal on May 17, 2023, in accordance with the court's order. Amended Notice of Removal (docket entry 10).

On June 5, 2023, Bennett responded to the motion, arguing that the release is unenforceable. Plaintiff Venitta Bennett's Response to Defendants LTF Club Management Company, LLC, LTF Club Operations Company, Inc., and LTF Real Estate Company, Inc.'s Motion for Summary Judgment (docket entry 11); Plaintiff Venitta Bennett's Reply Brief in Support of Plaintiff's Response to Defendants LTF Club Management Company, LLC, LTF Club Operations Company, Inc., and LTF Real Estate Company, Inc.'s Motion for Summary Judgment ("Response") (docket entry 12).

On June 16, 2023, Life Time filed its reply. Defendants' Reply to Plaintiff Venitta Bennett's Response to Defendants LTF Club Management Company, LLC, LTF Club Operations Company, Inc., and LTF Real Estate Company, Inc.'s Motion for Summary Judgment (docket entry 21); Defendants' Brief in Support of their

Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment ("Reply") (docket entry 22).

On July 14, 2023, Life Time filed a motion for default judgment on its counterclaim. Defendants' Motion for Default Judgment (docket entry 30). The Clerk of Court entered default against Bennett on July 19, 2023. Clerk's Entry of Default (docket entry 33). The court filed the final judgment on the counterclaim the same day. Final Judgment on Defendants' Counterclaims (docket entry 34).

Then Bennett filed a motion to set aside the entry of default on August 8, 2023. Motion to Vacate or Set Aside Entry of Default and Default Judgment, with Brief in Support ("Default Motion") (docket entry 35). On August 28, 2023, Life Time filed its response to the motion, Defendants' Response to Plaintiff's Motion to Set Aside Entry of Default and Default Judgment, with Brief in Support ("Default Response") (docket entry 36), and on September 8, 2023, Bennett filed her reply, Plaintiff's Reply Brief in Support of Motion to Vacate or Set Aside Entry of Default and Default Judgment ("Default Reply") (docket entry 37). The motions are now ripe for decision.

## II.  ANALYSIS

### A.  Evidentiary Burdens on Motions for Summary Judgment

Summary judgment is proper when the pleadings, depositions, admissions, disclosure materials on file, and affidavits, if any, "show[ ] that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a), (c)(1).[2] A fact is material if the governing substantive law identifies it as having the potential to affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; see also *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001) ("An issue is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham."). To demonstrate a genuine issue as to the material facts, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986). The nonmoving party must show that the evidence is sufficient to support the resolution of the material factual issues in her favor. *Anderson*, 477 U.S. at 249 (citing *First National Bank of Arizona v. Cities Service Company*, 391 U.S. 253, 288-89 (1968)).

When evaluating a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party. *Id.* at 255 (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)). It is not, however,

---

[2] Disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir. 1986).

incumbent upon the court to comb the record in search of evidence that creates a genuine issue as to a material fact. See *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). The nonmoving party has a duty to designate the evidence in the record that establishes the existence of genuine issues as to the material facts. *Celotex Corporation v. Catrett*, 477 U.S. 317, 324 (1986). "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara*, 353 F.3d at 405.

### B. Motion for Summary Judgment

Life Time argues that the membership agreement precludes Bennett's claim because the membership agreement's release of liability is enforceable. Motion ¶¶ 9-12. Bennett contends that the membership agreement is not binding because she did not sign a waiver of liability and her signature attached to the agreement was "either attached fraudulently, or fraudulently induced." *See* Response ¶¶ 4, 13-16 ("[A] cursory glance at the produced document raises some concerns at to [the] veracity of this supposed contract."). Also, Bennett argues, the contents of the membership agreement were "entirely hidden from her" since the Life Time employee did not show her a copy of the contract and Bennett "was directed to sign her name on an electronic pad for what she was [led] to believe . . . was an agreement limited to the price, amenities, and hours of the gym." *Id*. ¶¶ 18-19. Further, Bennett was never

- 7 -

advised to seek legal counsel prior to signing the contract even though she is a lay person. *Id.* ¶ 20.

Notably, Bennett admits in her affidavit that she signed a membership agreement with Life Time, even if she did not know of its contents. *See* Exhibit 1, *attached to* Response ("Bennett's Affidavit") (docket entry 12-1) ¶¶ 10-11 ("I believed that I was signing a document that was limited to the price for the membership, the available amenities, and the available gym hours since this was all that was discussed with the sales person[.]"). Also, Bennett does not dispute that the membership agreement's release was conspicuous. *See generally* Response.

Under Texas law, contractual releases are an affirmative defense. TEX. R. CIV. P. 94. In general, "a release surrenders legal rights or obligations between the parties to an agreement" and it extinguishes a claim as effectively as a prior judgment between the parties would. *Dresser Industries, Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993). Indemnification of a party for its own negligence "is an extraordinary shifting of risk;" therefore, the Texas Supreme Court "has developed fair notice requirements which apply to these types of agreements." *Id.*

Fair notice requires that the release satisfies the express negligence doctrine and be conspicuous. *Storage & Processors, Inc. v. Reyes*, 134 S.W.3d 190, 192 (Tex. 2004) (citing *Dresser*, 853 S.W.2d at 509-10). The express negligence doctrine requires that "the intent of the parties must be specifically stated in the four corners

of the contract." *Ethyl Corporation v. Daniel Construction Company*, 725 S.W.2d 705, 708 (Tex. 1987). For a release to be conspicuous, "something must appear on the face of the [contract] to attract the attention of a reasonable person when he looks at it." *Dresser*, 853 S.W.2d at 508 (quoting *Ling & Co. v. Trinity Savings & Loan Association*, 482 S.W.2d 841, 843 (Tex. 1972)). Language in the release may satisfy the conspicuousness requirement "by appearing in larger type, contrasting colors, or otherwise calling attention to itself." *Reyes*, 134 S.W.3d at 192. If the release does not satisfy both the express negligence doctrine and the conspicuous requirement, then it is unenforceable as a matter of law. *Dresser*, 853 S.W.2d at 509-10. Whether a contract provides fair notice is a question of law. *Id*.

Life Time relies on the membership agreement's following provision:

> **WAIVER OF LIABILITY.** On behalf of myself and my spouse/partner, children/Minor Members, Other Members, Guests, parents, guardians, heirs, next of kin, personal representatives, heirs and assigns, I hereby voluntarily and forever **release and discharge Life Time from**, covenant and **agree not to sue Life Time for**, and **waive, any claims,** demands, actions, causes of action, debts, damages, losses, costs, fees, expenses or any other alleged liabilities or obligations of any kind or nature, whether known or unknown . . . **for any Injuries** to me, Minor Member(s), Other Member(s), or Guest(s) in the Use of Life Time Premises and Services which **arise out of, result from, or are caused by any NEGLIGENCE OF LIFE TIME**, me, any Minor Member(s), any Other Member(S), any Guest(s), and/or any other person[.]

- 9 -

Exhibit A-1, *attached to* Motion ("Membership Agreement") (docket entry 5-2) ¶ 3 (emphasis in original).  The membership agreement then defines waived negligence claims to include:  "negligent design, construction . . . , repair, maintenance, operation, supervision, monitoring or provision of Life Time Premises and Services" and "negligent failure to warn of or remove a hazardous, unsafe, dangerous or defective condition."  *Id.* ¶ 3a.

Bennett sued Life Time for negligence resulting from a dangerous condition on Life Time's premises, which violates Life Time's "duty to inspect and remedy hazardous conditions" or "appropriately warn Plaintiff of the condition."  Petition ¶¶ 14-15.  Life Time argues that Bennett's claim is precluded because it falls within the scope of the release.  Motion ¶ 12.  Bennett does not dispute the scope or fair notice requirements of the release; she only maintains that she is not bound to the membership agreement.

1. *Express Negligence Doctrine*

Life Time argues that the "**WAIVER OF LIABILITY**" section of the membership agreement bars Bennett's negligence claim.  *Id.*  Bennett did not brief the court on whether the membership agreement provided fair notice as required by Texas common law.  *See generally* Response.  Instead, Bennett argues that the release is unenforceable because she never saw the membership agreement nor did the Life Time employee inform her of its contents.  *Id.* ¶¶ 17-19, 22.  Bennett's argument

does not affect the express negligence doctrine because it fails to discuss whether the membership agreement "specifically state[s] in the four corners of the contract" the parties' intent to release Life Time for potential negligence claims. *Ethyl Corporation*, 725 S.W.2d at 708.

The Waiver of Liability section explicitly states that Life Time is not liable for any injury resulting from its negligence. Therefore, the parties' intent to release Life Time from its liability for its negligence causing Bennett's injuries is specifically stated within the four corners of the agreement. See *Quintana v. CrossFit Dallas, L.L.C.*, 347 S.W.3d 445, 450 (Tex. App. – Dallas 2011, no pet.) (quoting *Atlantic Richfield Co. v. Petroleum Personnel, Inc.*, 768 S.W.2d 724, 726 (Tex. 1989)) ("Language that specifically refers to 'any negligent act of [the released party]' may be sufficient to define the parties' intent."). Consequently, the membership agreement satisfies the express negligence doctrine.

### 2. *Conspicuousness*

Life Time argues that the release is conspicuous because the membership agreement contains the "**WAIVER OF LIABILITY**" provision and other important clauses within the provision were designated in bold and capital lettering. Motion ¶ 12; Membership Agreement ¶ 3 (emphasis in original). Again, Bennett does not argue that the release in the membership agreement is not conspicuous. *See generally* Response.

As cited above, the release includes bolded and capitalized words that are different from most of the membership agreement.  *See generally* Membership Agreement.  Other district courts have found when membership agreement includes bolded and otherwise emphasized language, the release is sufficient for the conspicuousness requirement.  See, *e.g., Jung v. 24 Hour Fitness USA, Inc.*, No. 4:17-CV-787, 2018 WL 5045214, at *4-5 (E.D. Tex. Oct. 17, 2018) (holding that "**THIS AGREEMENT INCLUDES A RELEASE OF LIABILITY AND ASSUMPTION OF RISK IN SECTION 10**" combined with "**RELEASE OF LIABILITY, ASSUMPTION OF RISK, AND INDEMNIFICATION**" was sufficient for the conspicuousness requirement) (emphasis in original).  The court concludes that emphasis in the membership agreement would alert a reasonable person to the terms of the release.  See *Dresser,* 853 S.W.2d at 508 (The requirement "mandates 'that something must appear on the face of the [contract] to attract the attention of a reasonable person when he looks at it.'"); *Reyes*, 134 S.W.3d at 192 ("Language may satisfy the conspicuousness requirement by appearing in larger type, contrasting colors, or otherwise calling attention to itself.'").  Thus, the release is enforceable as a matter of law, and Bennett's claim against Life Time are barred by the membership agreement.

### 3. *Bennett's arguments*

Although Bennett does not argue that the membership agreement did not meet the fair notice standard set out by Texas courts, Bennett generally argues that the release is not enforceable. *See* Response ¶ 4 ("Bennett's signature . . . was either attached fraudulently, or fraudulently induced."). Additionally, Bennett argues that the membership agreement is not enforceable because Bennett is not an attorney and was not advised to obtain representation in signing the membership agreement. *Id.* ¶ 20. The thrust of Bennett's argument is: had she known that the release would bar negligence claims, she would have never signed the membership agreement. *See id.* ¶ 18. The court is not convinced that these arguments affect the enforceability of the membership agreement's release.

Importantly, Bennett admitted that she signed a membership agreement with Life Time. Bennett's Affidavit ¶ 11 ("I believed that I was signing a document that was limited to the price for the membership, the available amenities, and the available gym hours since this was all that was discussed with the sales person[.]"). Nor does Bennett raise a fraud defense to the membership agreement other than that the membership agreement produced by Life Time is not the same agreement that Bennett signed. *See* Response ¶¶ 13-16 ("[A] cursory glance at the produced document raises some concerns as to the veracity of this supposed contract.").

- 13 -

Bennett avers in her affidavit, however, that she did not read the membership agreement when she signed it. Bennett's Affidavit ¶ 14 ("[Bennett] was directed to electronically sign [her] name on a signature capture technology device, and never physically saw the terms of the contract."). Thus, Bennett does not have appropriate summary judgment evidence to substantiate her argument that the membership agreement submitted by Life Time is not the same as the one she signed. Bennett does not have personal knowledge to testify to the contents of whatever document she signed because she avers that she never read it. *See* FED. R. CIV. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). Thus, Bennett cannot raise a genuine issue of material fact of whether Life Time altered the membership agreement.

Bennett also contends that two district court cases preclude Life Time from enforcing the membership agreement's release. Response ¶¶ 23, 25. Bennett cites *Nungesser v. LTF Club Operations Company, Inc.*, No. H-12-2602, 2014 WL 345678 (S.D. Tex. Jan. 30, 2014), and *Davis v. Life Time Fitness Inc.*, No. 3:16-CV-2360-K, 2016 WL 6277815 (N.D. Tex. Oct. 25, 2016) (Kinkeade, J.), to support her argument that the release is not binding. *Nungesser* is inapposite because the plaintiff never signed the membership agreement with Life Time – the plaintiff's husband did

- 14 -

when he obtained a gym membership. See *Nungesser*, 2014 WL 345678, at *1. In contrast, Bennett has admitted she signed the membership agreement. Bennett's Affidavit ¶ 11. And *Davis* is inapposite because it does not address the enforceability of the membership agreement's release. See *Davis*, 2016 WL 6277815. Instead, the court in *Davis* analyzed the scope of the release and whether it applied to the negligence of Life Time's employees or solely to the negligence of Life Time itself. *Id.* at *3.

Finally, Bennett's contention that the membership agreement is unenforceable because she did not know of the terms of the agreement is unavailing. When a party signs a contract, regardless of whether he or she factually read the terms, Texas law "presumes that the party knows and accepts the contract terms." *National Property Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 425 (Tex. 2015). It is not the court's job "to protect parties from their own agreements." *El Paso Field Services, L.P. v. MasTec North America, Inc.*, 389 S.W.3d 802, 810-11 (Tex. 2012). Bennett's layperson argument is equally unconvincing as non-attorneys enter into contracts every day without legal advice. Nor does Bennett offer authority that indicates that non-attorneys, without legal representation, cannot be held to their agreements. Thus, Bennett's arguments do not affect the court's ultimate conclusion that her claims are barred by the membership agreement's release.

### C. Motion to Set Aside Default and Default Judgment

Under Rule 55(c), courts may set aside an entry of default upon a showing of good cause. FED. R. CIV. P. 55(c). The good cause standard is a liberal one. *Effjohn International Cruise Holdings, Inc. v. A & L Sales, Inc.,* 346 F.3d 552, 563 (5th Cir. 2003). In deciding whether a defendant has shown good cause, courts consider whether: (1) the failure to respond was due to excusable neglect; (2) the opposing party would suffer prejudice if the default was set aside; and (3) the defaulting party has presented a meritorious defense. *Id.*; *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 64 (5th Cir. 1992) (adopting excusable neglect inquiry instead of willfulness). "The decision to set aside a fault decree lies within the sound discretion of the district court." *United States v. One Parcel of Real Property*, 763 F.2d 181, 183 (5th Cir.1985).

Bennett moves to set aside the default and default judgment against her. Default Motion. Bennett argues that the entry of default judgment was substantively and procedurally incorrect. *Id.* Additionally, Bennett argues that because she has presented a meritorious defense, the court should set aside the entry of default. *Id.* at 24-26. Bennett does not, however, argue that her default was due to excusable neglect or that the defendant would not suffer prejudice if the default was set aside.

The court will not set aside the Clerk's entry of default. In this case, Bennett uniquely received notice that she was in default on July 3, 2023. *See* Electronic Order

(docket entry 23) ("Although the plaintiff is in default, the defendants have failed to move for entry of default and a default judgment."). But Bennett did not rectify this default. Bennett filed a procedurally defective motion for leave to file an answer and an answer to Life Time's counterclaim on July 6, 2023. *See* Plaintiff Venitta Bennett's Motion for Leave to File Answer to Counter-Claims (docket entry 24); Plaintiff Venitta Bennett's Answer to Counter-Claims (docket entry 25). But the court ordered those filings to be unfiled on July 7, 2023, because the motion and answer were deficient. *See* Order Striking/Unfiling Pleading (docket entry 27) (unfiling Bennett's motion for leave because a motion for leave to amend must have a copy of the proposed amended pleading attached as an exhibit); *see also* Order Striking/Unfiling Pleading (docket entry 28) (unfiling Bennett's answer to counterclaim because leave was required). Bennett never filed a motion for leave to file her answer with the proposed pleading attached as an exhibit, as required.

Also on July 7, 2023, Life Time filed a deficient motion for default judgment. *See* Defendants' Motion for Default Judgement (docket entry 26); Order Striking/Unfiling Pleading (docket entry 29). Bennett had the time to file her corrected motion because the court unfiled Life Time's motion on July 13, 2023. See *id.* On July 14, 2023, Life Time filed a second motion for default judgment. Defendants' Motion for Default Judgment (docket entry 30). The court entered an electronic order on July 18, 2023, stating that the defendants had failed to move for

- 17 -

entry of default and gave Life Time until July 19, 2023, to move for such relief. Electronic Order (docket entry 31). Life Time filed its motion for entry of default on July 19, 2023, in accordance with the court's order. Defendants' Request for Entry of Default by Clerk (docket entry 32).

Bennett had from the time when she was notified of the defects on July 7, 2023, until July 19, 2023, to file for leave to file her answer. Bennett did not. Nor does Bennett explain how her failure to answer is the result of excusable neglect. See *Effjohn*, 346 F.3d at 563. And Bennett's proffered meritorious defense that she did not sign the membership agreement, *see* Default Motion at 24-26, has been disposed of *supra*. Therefore, the court will not set aside the entry of default.

### III.  CONCLUSION

For the reasons stated above, the membership agreement's release is enforceable against Bennett. Consequently, Bennett's claim is barred by law, and Life Time's motion for summary judgment on Bennett's negligence claim is **GRANTED**. Additionally, Bennett's motion to set aside the entry of default is **DENIED**. Judgment will be entered for the defendants.

**SO ORDERED**.

October 12, 2023.

*[signature: A. Joe Fish]*

**A. JOE FISH**
**Senior United States District Judge**